Hines, Geraldine S., J.
INTRODUCTION
The plaintiff, Biogen Idee U.S. Corporation (“Bio-gen”), brought an action before this Court for a declaratory judgment that the laws of the Commonwealth of Massachusetts govern the terms of Lisa Blanton’s employment and termination of employment with Biogen. Biogen’s declaratory judgment complaint also seeks an order from this Court declaring that Biogen did not: (1) wrongfully terminate Blanton’s employment in violation of Massachusetts common law; (2) violate the Sarbanes-Oxley Act; (3) retaliate against Blanton for any protected whistle-blowing activity; (4) discriminate or retaliate against her on the basis of her gender or complaints about gender discrimination in violation of Massachusetts common law; or (5) engage in any other conduct towards Blanton violating any other statutory or common law.
Blanton has filed an anti-SLAPP (Strategic Litigation Against Public Participation) special motion to dismiss Biogen’s declaratory judgment complaint pursuant to G.L.c. 231, §59H. Blanton has met her threshold burden required for a special motion to dismiss pursuant to G.L.c. 231, §59H. In addition, Biogen has failed to meet its burden to show, by pleadings and affidavits, and by a preponderance of the evidence, that (1) Blanton’s petitioning activities were devoid of any reasonable factual support or any arguable basis of law and (2) Blanton’s acts caused actual injury to Biogen. G.L.c. 231, §59H. Accordingly, for the reasons set forth below, Blanton’s special motion to dismiss is ALLOWED.

BACKGROUND

Biogen is a Massachusetts corporation with its principal place of business in Cambridge, Massachusetts. In April 1997, Biogen hired Blanton as a National Accounts Manager. In October 2002, Blanton accepted the position of Associate Director, Medicare, in the National Accounts Department. Biogen contends that as part of her employment, Blanton signed a “Noncompetition, Nonsolicitation, and Nondisclosure Agreement” (“the nondisclosure agreement”) on or about April 12, 2002. The nondisclosure agreement contains a provision stating that any employment action by Blanton against the company is governed by the laws of the Commonwealth of Massachusetts.
Blanton primarily worked out of her home office in Ohio. Although Blanton traveled throughout the United States in the course of her employment with Biogen, the company argues that to the extent any location other than Blanton’s home office was her primary place of employment, that location was Biogeris world headquarters in Cambridge, Massachusetts. Biogen contends that most of Blanton’s supervisors reside near the company’s Massachusetts headquarters and most of the company’s personnel records, human resource functions, and documents are maintained in Cambridge.
Biogen argues that on or about January 8, 2004, the company posted an opening for the position of Director *291 of National Accounts and that the posting remained open until January 15, 2004, as per Biogen policy. The company contends that Blanton never applied or formally expressed an interest in the position. Blanton claims that the company passed her over for the position and instead hired a less-qualified male. On June 10, 2004, Blanton filed an EEOC gender discrimination charge in Ohio. The EEOC transferred the matter to its Boston office and cross-filed with the MCAD. From September 25, 2004 through December 31, 2004, Blanton was on leave under the Family Medical Leave Act (“FMLA’j. On December 22, 2004, the MCAD issued a letter to Biogen advising the company of the EEOC and MCAD charge. Blanton was terminated on December 28, 2004.
Blanton sent a demand letter to Biogen on January 28, 2005. The demand letter set forth multiple claims against the company, including violations of G.L.c. 15 IB, the Sarbanes-Oxley Act of2002, the Family and Medical Leave Act, and the District of Columbia Human Rights Act. The letter set out terms for settlement and indicated that if a response was not received from Biogen by February 9, 2005, Blanton would initiate legal action. On February 4, 2005, Biogen filed its complaint for declaratoryjudgment with this Court. On February 15, 2005 and February 18, 2005, respectively, Blanton filed complaints with the Department of Labor (“DOL”) and the United States District Court for the District of Columbia (D.C. District Court).

DISCUSSION

I. Special Motion to Dismiss Pursuant to G.L.c. 231, §59H

The Massachusetts Anti-SLAPP Statute, G.L.c. 231, §59H, was passed to protect individual citizens from lawsuits designed to chill their right of petitioning and free speech. The statute sets out in relevant part that “(i]n any case in which a party asserts that the civil claims against said party are based on said party’s exercise of its right to petition under the constitution of the United States or of the commonwealth, said party may bring a special motion to dismiss.” Id. As the Supreme Judicial Court described:
The objective of SLAPP suits is not to win them, but to use litigation to intimidate opponents’ exercise of rights of petitioning and speech. SLAPP suits target people for “reporting violations of law, writing to government officials, attending public hearings, testifying before government bodies, circulating petitions for signature, lobbying for legislation, campaigning in initiative or referendum elections, filing agency protests or appeals, being parties in law-reform lawsuits, and engaging in peaceful boycotts and demonstrations.”
Duracraft Corp. v. Holmes Prods. Corp., 427 Mass. 156, 161-62 (1998) (internal citations omitted). The act itself broadly defines the right to petition as:
any written or oral statement made before or submitted to a legislative, executive, or judicial body, or any other governmental proceeding; any written or oral statement made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other governmental proceeding; any statement reasonably likely to encourage consideration or review of an issue by a legislative, executive, or judicial body or any other governmental proceeding; any statement reasonably likely to enlist public participation in an effort to effect such consideration; or any other statement falling within the constitutional protection of the right to petition the government.
G.L.c. 231, §59H.
A. The Burden on the Moving Party Under G.L.C. 231, §59H
Under G.L.c. 231, §59H, the moving party is required to make a prima facie showing that she is exercising her right to petition. Formerly, this was all the showing the moving party needed to make to cause the burden of production to then shift to the non-moving party. The non-moving party was then required to show that the moving party’s exercise of her right to petition was (1) devoid of any reasonable factual support or any arguable basis in law and (2) caused actual injury to the non-moving party. G.L.c. 231, §59H. Under this earlier standard, there was a question of whether the anti-SLAPP legislation was intended to authorize the dismissal of an otherwise valid claim. If the anti-SLAPP legislation did so authorize such dismissals, then it would impair the constitutionally protected right to petition a court or some other governmental body with such authority" for redress of a grievance.
The Duracraft court resolved this question by clarifying and sharpening the shifting burdens required by the Act, and increasing the threshold burden of production upon the moving party. The new rule is as follows:
Because the Legislature intended to immunize parties from claims “based on” their petitioning activities, we adopt a construction of “based on” that would exclude motions brought against meritorious claims with a substantial basis other than or in addition to the petitioning activities implicated. The special movant who “asserts” protection for its petitioning activities would have to make a threshold showing through the pleadings and affidavits that the claims against it are “based on” the petitioning activities alone and have no substantial basis other than or in addition to the petitioning activities. Once the special movant so demonstrates, the burden shifts to the nonmoving party as provided in the anti-SLAPP statute. Such a showing by the special movant should serve to distinguish meritless from meritorious claims, as was intended by the Legislature.
Duracraft, 427 Mass. at 167-68 (emphasis added) (internal citations omitted).

*292
1. Right to Petition

Therefore, in order to prevail on her special motion to dismiss pursuant to the anti-SLAPP statute, Blanton must first show that her statements were made while exercising her right to petition. It is clear that the defendant has a legal right to seek relief from unlawful discrimination and termination without fear of retaliation against employers who are subject to G.L.c. 151B. See G.L.c. 151B, §4(4). In this case, Blanton sought redress for her grievances by using an administrative avenue open to her through the EEOC and MCAD. In fact, her EEOC charge is still pending, as are the DOL and D.C. District Court cases. In addition, prior to filing complaints with the DOL and the D.C. District Court, Blanton sent Biogen a demand letter outlining additional grievances and notifying Biogen of her intent to proceed with litigation unless a settlement agreement was reached. For the purposes of G.L.c. 231, §59H, the demand letter also constitutes a “petitioning activiiy” because it is a written statement made in connection with a judicial proceeding. See G.L.c. 231, §59H.
2. Whether Biogen’s Declaratory Judgment Complaint Is “Based On” the Petitioning Activity Alone
Second, Blanton must show that Biogen’s declaratoiy judgment complaint is “ ‘based on’ the petitioning activities alone and [has] no substantial basis other than or in addition to the petitioning activities.” Duracraft, 427 Mass. at 167-68. The critical issue in the second prong is whether Biogen’s declaratory judgment complaint has a substantial basis other than or in addition to the petitioning activity. The short answer is that Biogen’s complaint, taken as a whole, does not have a substantial basis in addition to Blanton’s petitioning activiiy. I turn first to a review of the antiSLAPP statute case law and then to analysis of whether Biogen’s declaratory judgment complaint is “based on” Blanton’s petitioning activities.
In Duracraft, two companies were involved in a contentious trademark dispute. The plaintiff, Duracraft, and the defendant, Holmes Products, were direct competitors in the consumer home appliances market. Marino, a Holmes employee and former Duracraft employee, had signed a nondisclosure agreement with Duracraft while in Duracraft’s employ. During the trademark litigation, Marino was deposed by his then-current employer, Holmes, at the objection of Duracraft. Marino gave the deposition testimony over Duracraft’s objections.
Duracraft then filed a complaint alleging that Marino’s deposition testimony was a breach of the nondisclosure contract with Duracraft. Duracraft at 159. The Superior Court dismissed Duracraft’s complaint pursuant to G.L.c. 231, §59H. On appeal, the Supreme Judicial Court upheld an interlocutoiy order denying the special motion to dismiss. The court found that “Duracraft submitted to the court a copy of the nondisclosure agreement, which constitutes a substantial basis other than Marino’s petitioning activiiy [the deposition testimony] to support Duracraft’s claims. The defendant’s special motion therefore must fail.” Duracraft at 168 (emphasis added).
In the case of the Ayaslis and the Armstrongs, owners of adjacent waterfront properly, the Armstrongs opposed the proposed renovations to the Ayaslis’ house, doing “everything they could to stop this project.” Ayasli v. Armstrong, 56 Mass.App.Ct. 740, 744 (2002). After a long and contentious battle, numerous appeals to departments and commissions, and challenges to special permits, the Ayaslis prevailed and completed what had become necessary construction to their home. The Ayaslis filed a lawsuit claiming that the Armstrongs had violated their civil rights, specifically their right to use and enjoy their property. The Armstrongs answered, filed a counterclaim for abuse of process, and a special motion to dismiss under G.L.c. 231, §59H. The court held that the complaint was not a SLAPP suit as the defendants had failed to make the threshold showing that the claims against them were based on their petitioning activities alone. The court reasoned that, “[a]lthough one could infer that the defendants’ persistent petitioning activities played a role in the plaintiffs’ decision to file the complaint, there was also an independent basis for the complaint — that the defendants were intentionally interfering with the plaintiffs’ right to use and enjoy their properly.” Ayasli at 748 (emphasis added).
In Garabedian v. Westland, 59 Mass.App.Ct. 427 (2003), the Appeals Court found that the plaintiffs declaratory judgment complaint had a substantial basis other than or in addition to the defendant’s petitioning activities. In Garabedian, the plaintiff had been bringing fill onto his land to build a private airport runway. The defendants protested before town and state officials, summoned the police, leafleted the neighborhood, and organized attendance at public meetings — each of which the court acknowledged were petitioning activities. Id. at 432. However, the defendants had also harassed Garabedian’s contractor and used video surveillance to monitor Garabedian’s activity. Id. While “[s]ome of the challenges thrown up by the defendants . . . had the character of ‘petitioning activity’ as that has been described in the anti-SLAPP statute, G.L.c. 231, §59H, and by decisional law interpreting that statute . . . [o]ther aspects of their intervention . . . lacked the characteristics of petition . . .” Id. at 432. The Appeals Court vacated the Superior Court’s allowance of the special motion to dismiss because there was a substantial basis for the declaratory judgment complaint other than or in addition to the defendants’ petitioning activities. Id.
In the present case, Biogen admittedly filed its complaint for declaratory judgment in response to Blanton’s petitioning activities. However, in order for *293 Blanton to meet the second prong of her threshold burden, she must prove that Biogen’s complaint, taken as a whole, does not have a substantial basis other than and in addition to Blanton’s petitioning activities. Blanton has met this burden.
In Durcrafb Ayasli, or Garabedian, the courts found that there was a substantial basis other than or in addition to the petitioning activities of the defendants. In contrast, Biogen’s complaint, which requests multiple declarations from this Court on the applicability of state and federal laws, is not substantially based on anything other than Blanton’s exercise of her right to petition. Even if this Court were to consider the nondisclosure agreement as a partial basis for some of the declaratoiy judgment charges, the agreement is not the substantial basis for the majority of claims set forth by Biogen’s declaratory judgment complaint. Instead, this Court finds that the aggregate of Biogen’s declaratoiy judgment claims are substantially based, not on the nondisclosure agreement, but on the veiy nucleus of facts which Blanton’s petitioning activities (her pending EEOC and MCAD charges and the claims set forth in her demand letter, now pending before the DOL and the D.C. District Court) seek to redress.
In addition, as Blanton argues, a declaratoiy judgment by this Court in favor of Biogen would foreclose Blanton’s EEOC, MCAD, and demand letter claims. A declaratoiy judgment complaint that preempts a litigant’s constitutionally protected right to petition, for the ultimate purpose of denying the litigant that right, is precisely the type of claim for which the Legislature enacted the anti-SLAPP motion to dismiss.
Therefore, for the reasons set forth above, Blanton has met both the first and second prong of her threshold burden. Blanton has proven that the charges alleged in her EEOC and MCAD complaints, and the charges outlined in her demand letter and ultimately filed before the DOL and D.C. District Court, constitute “petitioning activities” for purposes of G.L.c. 231, §59H. Blanton has also satisfied the second prong of her threshold burden by proving through her pleadings that the claims of Biogen’s complaint, in their totality, do not have a substantial basis other than or in addition to Blanton’s petitioning activities.

A. The Burden on the Nonmoving Party Under G.L.c. 231, §59H

“Once the special movant [demonstrates that the claims against it are ‘based on’ the petitioning activities alone and have no substantial basis other than or in addition to the petitioning activities], the burden shifts to the nonmoving party as provided in the anti-SLAPP statute.” Duracrqft at 167. Specifically, Biogen has the burden to show, by pleadings and affidavits, and by a preponderance of the evidence, that Blanton’s petitioning activities were (1) devoid of any reasonable support or arguable basis in law and (2) the petitioning activities caused actual injuiy to the responding party. G.L.c. 231, §59H. Biogen has failed to address either of these requirements in any of its pleadings or affidavits. However, based on the pleadings and affidavits before this Court, there is little doubt that Blanton’s EEOC, MCAD, DOL, and D.C. District Court charges have at least some reasonable support or arguable basis in law. It is also equally clear that Blanton’s petitioning activities have, in no way, caused “actual injury” to Biogen for the purposes of G.L.c. 231, §59H. Therefore, Biogen has not met its burden under the anti-SLAPP statute as the party opposing the special motion to dismiss.

ORDER

For the foregoing reasons, it is hereby ORDERED that the defendant’s special motion to dismiss pursuant to G.L.c. 231, §59H is ALLOWED, and to the extent that the statute imposes assessment of costs and reasonable attorneys fees, a hearing on the issue will be scheduled.